UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

S/N PRECISION ENTERPRISES, INC.
D/B/A PACAMOR KUBAR BEARINGS and
INTERCONTINENTAL BEARING SUPPLY, INC.,

                              Plaintiffs,

         v.                                          1:05-cv-0371

AXSYS TECHNOLOGIES, INC., SAPPORO
PRECISION, INC., KITANIHON SEIKI CO., LTD.,
AND SANBI CO., LTD,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

### I.        INTRODUCTION

Plaintiffs S/N Precision Enterprises, Inc. D/B/A Pacamor Kubar Bearings and

Intercontinental Bearing Supply, Inc. (collectively "Plaintiffs") commenced the instant action

against Defendants Axsys Technologies, Inc., Sapporo Precision, Inc., Kitanihon Seiki Co.,

Ltd., and Sanbi Co., Ltd., alleging deceptive trade practices in violation of the Lanham Act,

15 U.S.C. § 1501, et seq., and the tortious interference with prospective business relations.

Presently before the Court is Defendants Axsys Technologies, Inc., Sapporo Precision, Inc.

and Kitanihon Seiki Co., Ltd.'s (collectively "Defendants" or "Sapporo") motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(4) and 12(b)(6) on the grounds that: (1)

the Court lacks subject matter jurisdiction; (2) the Court lacks personal jurisdiction over

Defendants Sapporo Precision, Inc. and Kitanihon Seiki Co., Ltd. (the "Japanese

Defendants") and (3) the Complaint fails to state a claim upon which relief can be granted.

## II.      FACTS

The following facts are taken from the Complaint and, for purposes of this motion,

are assumes to be true.

### a.      Relevant Players

Plaintiff S/N Precision Enterprises is a domestic producer and seller of anti-friction

ball bearings to consumers in the United States.  Plaintiff Intercontinental Bearing Supply

("IBSCO") is a domestic seller of anti-friction ball bearings to consumers in the United States.

Defendant Sapporo Precision is a Japanese ball bearing trading company.  Defendant

Kitanihon is Japanese company that is part of the Sapporo Group companies.  Kitanihon

manufactures ball bearings.  Defendant Sanbi was a Japanese company controlled by

Sapporo that exported ball bearings to the United States.[1]  AST Bearings is a wholly owned

subsidiary of Defendant Axsys Technologies that distributes, in the United States, ball

bearings manufactured by Defendant Sapporo, or its companies.

### b.      Background/Factual Allegations

The United States Department of Commerce has determined that ball bearings

were being "dumped" in the United States.[2]  Upon a finding that imported goods are being

"dumped", the Department of Commerce imposes an anti-dumping duty on those imports to

---

[1] According to Defendants, Sanbi was dissolved in February 2000.  It, thus, appears that it is not a proper defendant.

[2] In its most general sense, "dumping" is the act of selling goods at less than fair market value. See Timken U.S. Corp. v. United States, 421 F.3d 1350, 1352 (Fed. Cir. 2005); NTN Bearing Corp. of America v. U.S., 295 F.3d 1263 (Fed. Cir. 2002); .

equalize the selling price of those goods.  An antidumping duty, or "dumping margin", is the difference between the "normal value" of a product (the price at which the good or a foreign like product is sold in the foreign home market in the ordinary course of trade) and its "export price" (the price at which the good is sold to an unaffiliated purchaser in the U.S. market.). See NTN Bearing Corp. of Am., 295 F.3d at 1266; RHP Bearings Ltd. v. U.S., 288 F.3d 1334, 1337 (Fed. Cir. 2002).  In other words, the purpose of the anti-dumping duty is to make up for the difference between the fair market value of the imported goods and the price at which the importer is selling the goods in the United States.  Because foreign ball bearings were found to have been dumped in the United States, Defendants' ball bearings were subject to an anti-dumping duty.

According to the Complaint, prior to July 2001, any of Defendants' goods exported to the United States would have been subject to a generalized 45.83 percent ad valorem cash-deposit anti-dumping rate.  In July 2001, following an administrative review, the Department of Commerce imposed a specific anti-dumping duty of 73.55 percent on the importation of all goods produced by Sapporo and entered into the United States during the period of May 1, 1999 through April 30, 2000.  This rate of 73.55% continued to apply to Sapporo's goods through April 30, 2001.  The Complaint alleges that Defendants devised a scheme to circumvent these 45.83 and/or 73.55 percent anti-dumping rates, thereby enabling Defendants to sell their products in the United States for less than fair value.

Specifically, Plaintiffs allege the following scheme.  It is claimed that, rather than shipping its products directly to the United States, Sapporo delivered complete or substantially complete ball bearings to Koyo Seiko Co, Ltd. ("Koyo"), another Japanese producer and exporter of ball bearings.  Sapporo instructed Koyo to return the bearings it did

not order to Sanbi.  Sanbi then exported the bearings that were returned to it by Koyo to AST in the United States.  Upon entering the goods into the United States, Sanbi represented that the goods were produced by Koyo; not Sapporo.  It is alleged that, in furtherance of this scheme, Defendants mislabeled or failed to identify the bearings as having been produced by Sapporo.  At all times relevant hereto, Koyo was subject to a 1.12 percent ad valorem antidumping rate (which was retroactively increased to 10.10 percent).  Thus, the Complaint alleges, Defendants were able to substantially reduce the anti-dumping duty to which its products were subject (both 1.12 and 10.10 being significantly less than 45.83 and 73.55 percent rates).  As a result, AST was able to sell ball bearings in the United States at a price below that which AST would have been able to sell had the bearings been subject to the proper anti-dumping duties.

Plaintiffs allege that the foregoing constituted the false designation of origin of and otherwise constituted misrepresentations of Defendants' products in violation of the Lanham Act.  Plaintiffs further allege that Defendants actions had the effect of tortiously interfering with Plaintiffs' prospective contractual relations.

## III.      STANDARD OF REVIEW

In ruling on a motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in favor of the nonmoving party.  Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 31 (2d Cir. 2005).  The Complaint may be dismissed only if it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief.  Id.

IV.      DISCUSSION

   a.      **Subject Matter Jurisdiction**

        Defendants first move to dismiss on the ground of subject matter jurisdiction. Defendants argue that this is, in reality, an anti-dumping dispute that must be heard in the International Court of Trade.  For the following reasons, the Court disagrees that the issue presented is one of subject matter jurisdiction, but nevertheless agrees that some of Plaintiff's claims do not state a claim upon which relief can be granted.

        To the extent that Plaintiffs are challenging either the anti-dumping rates at which Defendants products were imported or representations made by Defendants to Customs upon the importation of its products, those matters are not subject to private litigation in this Court, but are matters to be presented before the Department of Commerce and the Court of International Trade.  See, e.g., 19 U.S.C. § 1516a(a).

        Similarly, if Plaintiffs' true gripe is that they are the victims of dumping, then they have no remedy under federal law.  In 1916, Congress passed the Anti-Dumping Act, 15 U.S.C. § 72.  This provided a private cause of action for persons injured by dumping.  In 2004, however, Congress repealed this statute because of its desire to implement the decision of the Appellate Body of the World Trade Organization ("WTO") finding that the United States violated its obligations under the General Agreement on Tariffs and Trade ("GATT"), the Anti-Dumping Agreement, and the World Trade Organization ("WTO") Agreement.  See H.R. Rep. 108-415, at *2 (Feb. 6, 2004).  The WTO concluded that "Article VI:2 of GATT 1994 require that U.S. antidumping laws allow only the implementation of antidumping duties as a remedy for illegal dumping." Id. at *4.  In light of the repeal of 15 U.S.C. § 72 and the purpose surrounding it, the Court finds that Plaintiffs may not seek relief

for injuries sustained by anti-dumping and, similarly, may not use the Lanham Act to circumvent the purposes for repealing § 72.  This Court will not countenance a private cause of action the effect of which would circumvent the United States' international obligations when Congress has clearly manifested its intention to comply with those international obligations. Federal-Mogul Corp. v. U.S., 63 F.3d 1572 (Fed. Cir. 1995)  ("[A]bsent express Congressional language to the contrary, statutes should not be interpreted to conflict with international obligations.").

To the extent Plaintiffs Complaint otherwise states a claim under the Lanham Act, however, this Court has subject matter jurisdiction over this action.

### b.    Personal Jurisdiction

The Japanese Defendants next claim that the Court lacks personal jurisdiction over them.  "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir.1996) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)).  "Where . . . a court relies on pleadings and affidavits, rather than conducting a full-blown evidentiary hearing, the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant through its own affidavits and supporting materials." Distefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001) (internal quotation marks omitted).  The Court must construe the pleadings and affidavits in the light most favorable to Plaintiff, resolving all doubts in his favor. See CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986); Distefano, 286 F.3d at 84.

"In a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process." Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004). "Because the Lanham Act does not provide for national service of process, the New York state long-arm statute governs this inquiry." Id.

### 1.      N.Y.C.P.L.R. § 302(a)(1)

Defendants move to dismiss on the ground that personal jurisdiction is not supplied by N.Y.C.P.L.R. § 302(a)(1). In opposition, Plaintiffs do not argue that personal jurisdiction may be founded under § 302(a)(1), but, rather, that the Court may exercise personal jurisdiction under §§ 302(a)(2) and/or 302(a)(3). Accordingly, the Court need not consider jurisdiction under § 302(a)(1).

### 2.      N.Y.C.P.L.R. § 302(a)(2)

Section 302(a)(2) allows for long-arm jurisdiction where a defendant commits a tortious act in New York. The plaintiff's cause of action must arise from that tortious act. A Lanham Act violation "takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the . . . [misrepresentation] occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying [another's product]." Vanity Fair Mills, Inc. v. T. Eaton Co. Ltd., 234 F.2d 633, 639 (2d Cir. 1956).

Here, Plaintiffs allege that Defendants shipped mislabeled bearings to AST. Plaintiffs further allege that Defendants exclusively marketed their bearings through AST and that AST sold the bearings to customers in New York. In support of these allegations,

Plaintiffs point to certain marketing materials prepared by AST, wherein AST claims to be the exclusive distributor of EZO brand bearings.

These allegations are contradicted by affidavits from representatives of AST and Sapporo.  AST asserts in an affidavit that "[t]hese marketing materials were printed and issued by AST without consent or approval of Sapporo."  AST further states that there is no relation between AST and Sapporo other than that of an ordinary purchaser/supplier relationship.  AST explicitly states that, although it is an "authorized distributor," there is no distributor agreement whatsoever with Sapporo.  AST is under no agreement to purchase any minimum quantities from Sapporo and Sapporo is under no agreement to sell any minimum quantities to AST.  Furthermore, AST contends that the bearings from Sapporo are shipped "FOB Japanese port" and that title to the bearings passes to AST at the time of exportation from the Japanese port.  AST's assertions are substantiated by the affidavit submitted by Sapporo.

Based on the foregoing, the Court concludes that there is insufficient evidence demonstrating that Defendants committed a tortious act within the State of New York.  There is no evidence that Defendants shipped any bearings to customers in New York.  Rather, the undisputed evidence is that Sapporo sells its bearings to AST (among other suppliers) and that AST takes title to the goods when they are in Japan.  There similarly is no evidence that Sapporo ships the bearings to AST in New York.  Accordingly, there is no basis upon which it can be concluded that Defendants committed a tortious act in the State of New York.

### 3.    N.Y.C.P.L.R. § 302(a)(3)

Section 302(a)(3) gives a court personal jurisdiction over a non-domiciliary if it "commits a tortious act without the state causing injury to person or property within the state .

. . ."  N.Y.C.P.L.R. § 302(a)(3).  To satisfy § 302(a)(3), Plaintiffs must demonstrate: (1) a

tortious act outside of New York; (2) injury in New York; and either (3)(i) that Defendants

regularly do or solicit business, engage in a persistent course of conduct, or derive

substantial revenue from goods used or consumed or services rendered in New York; or

(3)(ii) that Defendant expected or reasonably should have expected its acts to have

consequences in New York and Defendant derives substantial revenue from interstate or

international commerce.

       Assuming that Defendants committed a tort outside of New York that caused injury

in New York, there is insufficient evidence that they regularly do or solicit business, engage in

a persistent course of conduct, or derive substantial revenue from goods used or consumer

or services rendered in New York.  Defendants have submitted an affidavit demonstrating its

complete lack of any ties whatsoever to New York over the past seven years.  Plaintiffs have

not refuted this.  Accordingly, there is an insufficient basis upon which to conclude that the

conduct or activities of the Japanese Defendants meet the requirements of § 302(a)(3)(i).

       There similarly is a lack of evidence that these Defendants meet the requirements

of § 302(a)(3)(ii).  Plaintiffs' theory for finding jurisdiction under this section is that Defendants

have an exclusive distributorship arrangement with AST, which is known to market bearings

to New York.  Thus, according to Plaintiffs, the Japanese Defendants should reasonably

have expected its acts to have consequences in New York.  The problem with this is that, as

previously discussed, there is insufficient evidence of an exclusive distributor arrangement

between Sapporo and AST.  Absent an exclusive distribution contract, there is no basis upon

which the Court can conclude that the Japanese Defendants attempted to serve the New

York market or otherwise purposefully affiliated themselves with New York.  There is no

evidence of any agreements made by the Japanese Defendants to service the New York market.  Again, the Japanese Defendants have submitted an affidavit demonstrating that they have had no contact whatsoever with New York in the past seven years.  The only evidence before the Court is that the Japanese Defendants sold to AST and other purchasers in the United States.  There is no claim or evidence that any such sales were made in, or intended for, New York.  There is no claim or evidence of direct sales to New York.  Although it may have been foreseeable that the Japanese Defendants products could have ended up in New York, there is insufficient evidence that they purposefully availed themselves of the benefits of New York law.  See Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 241 (2d Cir. 1999); Schaadt v. T.W. Kutter, Inc., 169 A.D.2d 969, 564 N.Y.S.2d 865, 866 (3d Dep't 1991); Murdock v. Arenson Int'l USA, Inc., 157 A.D.2d 110, 554 N.Y.S.2d 887 (1st Dept. 1990); Martinez v. American Standard, 91 A.D.2d 652, 457 N.Y.S.2d 97 (2d Dept. 1982), aff'd, 60 N.Y.2d 873, 470 N.Y.S.2d 367, 458 N.E.2d 826 (1983).  Without more, the act of selling goods to a distributor with knowledge that the distributor will market the goods throughout the United States is insufficient to support personal jurisdiction under § 302(a)(3).  Hein v. Cuprum, S.A. de CV., 136 F. Supp.2d 63, 68 (N.D.N.Y. 2001).

For the foregoing reasons, the Court finds that it lacks personal jurisdiction over the Japanese Defendants.

### c.    Lanham Act

The Lanham Act provides as follows:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125.

For a representation to constitute "commercial advertising or promotion" under 15 U.S.C. § 1125(a)(1)(B), it must be (1) commercial speech; (2) for the purpose of influencing consumers to buy defendant's goods or services; and, (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public. See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 56-58 (2d Cir. 2002).

Defendant AXSYS[3] moves to dismiss the Lanham Act claim on the ground that the Complaint fails to sufficiently allege commercial speech aimed at consumers. Defendant contends that the Complaint only makes allegations of misrepresentations made to the Department of Commerce and not to consumers, as is required by the statute. Defendant argues that "[b]y no reasonable interpretation can the Defendants' representations to U.S. Customs and mandated submissions to the [Department of Commerce] in the context of an antidumping review be considered 'promotional' in terms of product sales, or for the purpose of influencing consumers to buy defendant's goods. Moreover, these submissions are most

---

[3] All defendants moved to dismiss on this ground. Because there is no personal jurisdiction over the Japanese Defendants, Axsys is the only remaining Defendant.

certainly not disseminated to the purchasing public as 'advertising.'"  Plaintiff responds that the Complaint broadly alleges misrepresentations to consumers and that such allegations are sufficient to withstand a motion to dismiss.

Although Defendant's argument makes much logical sense, it relies on an overly narrow reading of the Complaint.  Without question, Plaintiffs' Complaint references misrepresentations made to the Department of Commerce in an effort to avoid the higher antidumping duties.  Furthermore, it is clear that the bulk of Plaintiffs' Complaint concerns Defendants' alleged efforts to circumvent certain anti-dumping duties.  The Complaint cannot, however, be so limited.  At paragraph 61, for example, the Complaint broadly alleges that "Defendants have engaged in a course of conduct which deceives as to the origin of antifriction ball bearings that are imported and sold by AST in the United States."  See also Compl. at ¶ 62.  At paragraph 63, the Complaint specifically alleges that Defendants engaged in a campaign to mislead, deceive or confuse "consumers."  The Complaint explicitly alleges that Defendant falsely designated the origin of the bearings "in connection with the importation of those goods into the United States *and the subsequent sale of those goods to consumers in the United States*.  Compl. at ¶ 66 (emphasis added).  See also Compl. at ¶¶ 64, 67, 84, 85.  These allegations are sufficient to state a claim and withstand a motion to dismiss.  It cannot be said that there are no set of facts that, if true, would entitle Plaintiffs to relief.  There may be facts that, in fact, Defendant engaged in commercial speech that was sufficiently disseminated to the relevant purchasing public for the purpose of influencing purchasing decisions.  Whether such facts exist can be tested at trial or on a motion for summary judgment.

#### d.        Tortious Interference With Prospective Business Relations

Defendant Axsys moves to dismiss the claims for tortious interference with prospective business relations on the grounds that: (1) Plaintiffs failed to plead the existence of a business relationship with a third party; (2) Plaintiffs failed to plead intentional interference;(3) Plaintiffs failed to allege any fraudulent or criminal acts; and (4) Plaintiffs failed to plead injury.  Plaintiffs have not addressed these arguments in opposition.  The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim.  See Rizzo-Puccio v. College Auxiliary Services, Inc., 216 F.3d 1073 (2d Cir.2000)(claims not addressed in opposition to defendants' motion for summary judgment were deemed abandoned); Barmore v. Aidala, 2005 WL 2154306 (N.D.N.Y. 2005); Sanchez v. Town of Greece, 2004 WL 1964505, at *5 (W.D.N.Y.,2004).  Moreover, under the local rules of this Court, failure to oppose a motion is deemed consent to granting that portion of the motion.  See N.D.N.Y.L.R. 7.1(b)(3); Bundy Am. Corp. v. K-Z Rental Leasing, Inc., 2001 WL 237218, at *1 (N.D.N.Y. Mar. 9, 2001)(Hurd, J.); Beers v. General Motors Corp., 1999 WL 325378, at *8 (N.D.N.Y. May 17, 1999) (McCurn, S.J.).

In any event, the Complaint is deficient.  "Under New York law, the elements of a claim for tortious interference with prospective business relations are: (1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship."  Nadel v. Play-By-Play Toys & Novelties, Inc., 208 F.3d 368, 382 (2d Cir. 2000).  Plaintiffs' Complaint is deficient because it fails to allege a specific relation with a third party (or third parties), any conduct by Defendant aimed at interfering with those relations, or any particular business relations that were

interrupted because of Defendant's conduct.  There similarly is nothing in the Complaint suggesting that Defendant directed its activities at the third party and/or somehow convinced a third party not to enter into a business relationship with Plaintiffs.  <u>Fonar Corp. v. Magnetic Resonance Plus, Inc.</u>, 957 F. Supp. 477, 482 (S.D.N.Y. 1997). Rather, the Complaint makes the conclusory allegation that as a result of Defendant's misstatements concerning the origin of its bearings, it interfered with prospective relationships of consumers in the United States. Accordingly, the tortious interference with business relations claim must be dismissed.

## V.      CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  The motion to dismiss is GRANTED insofar as: (1) the claims against Defendants Sapporo Precision, Inc. and Katanihon Seiki Co, Ltd. are DISMISSED for lack of personal jurisdiction;[4] and (2) the claims against Axsys (the sole remaining defendant) for the intentional interference with prospective business relationship are DISMISSED for failure to state a claim upon which relief can be granted.  In all other respects, Defendants' motion to dismiss is DENIED.

IT IS SO ORDERED.

Dated:   October 14, 2005

Thomas J. McAvoy
Senior, U.S. District Judge

---

[4] The claims against Sanbi should be dismissed because it is no longer in existence.